UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| GEORGE WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-01734-JMS-TAB |
| | ) | |
| TRENT ALLEN, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER**

Petitioner George Williams has filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. He challenges a prison disciplinary proceeding in which he was found guilty of trafficking and sanctioned with a demotion in one level of good-time credit-earning class, along with other non-custodial sanctions not relevant to this proceeding. [Filing No. 11-4 at 2.] For the reasons explained below, the Court takes Mr. Williams's Petition **UNDER ADVISEMENT** and **ORDERS** further proceedings.

I.
**LEGAL BACKGROUND**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

1

## II.
### FACTUAL BACKGROUND

On May 2, 2024, Intelligence Analyst A. Lommel charged Mr. Williams with Offense A-113, Trafficking, which prohibits "moving an unauthorized physical object from [or to] another person . . . without the prior authorization of the facility warden or designee." [Filing No. 11-1 at 1; Filing No. 11-11 at 2.] Analyst Lommel detailed the alleged trafficking in a Conduct Report as follows:

> On 5/2/2024 at approx. 2:15pm, I, intel analyst A. Lommel, was reviewing the cameras for the 5D range of GCH. During my review, I found that the GCH detail, identified as Offender George Williams #200566, swept a small piece of folded up paper under the 5D door to cell 2. Cell 2 then tossed it to Cell 3. Based on my training, knowledge, and experience as an analyst, the previously mentioned actions/activity meets the criteria for violation 113 Trafficking.

[Filing No. 11-1 at 1.]

The alleged incident was captured on video from two camera angles, and on July 1, 2024, Officer T. Solomon summarized the footage of Mr. Williams's alleged trafficking:

> I, Officer T. Solomon reviewed the video for Case # ISR-ISR-24-05-001240.
>
> I/I Williams is seen coming up the stairs and then to the front of the 5D range. You then see I/I Galloway in cell 2 on 5D motioning and then an item slides onto the range. Galloway then uses a stick made of paper to pull the item into his cell.

[Filing No. 11-5 at 1.]

At screening, Mr. Williams did not initially request a lay advocate, but he did request statements from witnesses. [Filing No. 11-2 at 1.] He requested that Miguel Castillo, a fellow inmate from the 5D range, answer the question, "Did the detail hand you anything?" [Filing No. 11-2 at 1.] Mr. Castillo responded, "No drugs were involved. No illegal activity took place." [Filing No. 11-7 at 1.] He later requested statements from correctional officers, asking Caseworker Gross, "Did you ask the detail to place a fan to blow down the hallway for your office to have air flow because it was hot?" [Filing No. 11-3 at 1.] Caseworker Gross answered, "Yes I did ask II

2

Williams to put a fan to point down towards my office due to it being hot. That is when he moved the big fan from the shower landing and plugged it into the utility closet upstairs by my office so I could have better airflow. He did what I requested and then left to go do something else if I remember correctly." [Filing No. 11-6 at 2.] Mr. Williams asked Sergeant Fish, "Is [it] the detail's job to sweep the hallway in front of 5D in GCH?" [Filing No. 11-3 at 1.] Sergeant Fish answered, "Yes it is." [Filing No. 11-6 at 1.] Along with Mr. Williams's request for the corrections-officer statements, he requested a lay advocate. [Filing No. 11-3 at 1.] Mr. Williams also requested access to the video footage documenting the alleged trafficking. [Filing No. 11-2 at 1.]

According to Mr. Williams's sworn declaration, on July 1, 2024, Officer Solomon delivered a video summary to him. [Filing No. 15 at 1.] As Officer Solomon "approached [his] cell door," Mr. Williams asked Officer Solomon "[d]o you know when you will be doing my hearing?" [Filing No. 15 at 1.] Mr. Williams showed Officer Solomon "policy 02-04-101 which states offenders must have disciplinary hearings conducted within a specified amount of time." [Filing No. 15 at 1-2.] Officer Solomon allegedly replied, "I do not give a f*** what policy says, to be completely honest with you, I have already found you guilty[.] I just have [to] print out the papers[.] [A] hearing is pretty much pointless. My mind is already made up." [Filing No. 15 at 2.] Mr. Williams states that he tried to ask why, but "before [he] could finish saying what [he] wanted to say," Officer Solomon cut him off and said, "You're guilty[.] [T]here is nothing to talk about." [Filing No. 15 at 2.] Mr. Williams alleges that Officer Solomon "proceeded to walk away from [his] cell door. Keep note this was all done" on July 1, 2024, "prior to any disciplinary hearing being held." [Filing No. 15 at 2.]

3

On July 3, 2024, Officer Solomon presided over Mr. Williams's disciplinary hearing. [Filing No. 11-4 at 2.] The Hearing Report states that Mr. Williams testified that he did not traffic, stating:

> If you look at the video footage, it doesn't say [I] transferred anything to anybody. Sgt. Fish told me to sweep and I did. I swept the range and didn't give them anything. I can't help what happened on the range. I worked back there for three months and did [not] get in any trouble.

[Filing No. 11-4 at 1.]

Officer Solomon also considered the video footage, and the statements by Sergeant Fish and Caseworker Gross. [Filing No. 11-4 at 1 (Hearing Report); Filing No. 11-5 at 1 (Officer Solomon's video summary).] The Hearing Report does not show that Officer Solomon considered the testimony of inmate Mr. Castillo. [Filing No. 11-4 at 1.] It shows the "Fish Witness Statement" and "Gross Witness Statement" were "Conduct-Evidence Document[s]" that were uploaded to the prison disciplinary system, but it does not show the statement of Mr. Castillo, who testified that "[n]o drugs were involved" and that "[n]o illegal activity took place." [Filing No. 11-4 at 1; Filing No. 11-7 at 1.] Officer Solomon has filed a sworn Declaration in this case, and states that he did consider Mr. Castillo's statement, and that he believes Mr. Castillo "did not deny . . . receiving something from [Mr.] Williams–he denied only that it involved drugs." [Filing No. 11-12 at 2.]

Officer Solomon found Mr. Williams guilty and explained that the allegedly trafficked item appeared while Mr. Williams was present on the range:

> The Item arrived on the range while he was by the range door. This leads me to believe that he introduced it to the range. We do not know what it was, but the exact contents [are] not relevant. Code 113 prohibits [g]iving, selling, trading, transferring, or in any other manner moving an unauthorized physical object to another person; or receiving, buying, trading, or transferring; or in any other manner moving an unauthorized physical object from another person without the prior authorization of the facility warden or designee, or possessing an amount of contraband/prohibited property where intent to transfer may be inferred.

[Filing No. 11-4 at 2.] Mr. Williams was sanctioned with certain non-custodial punishments and a demotion in one credit-earning class. [Filing No. 11-4 at 2.]

Mr. Williams recalls the disciplinary hearing differently than Officer Solomon's account. [Filing No. 15 at 2.] According to Mr. Williams's sworn Declaration, he "attempted to inform Hearing Officer T. Solomon during the disciplinary hearing on July 3rd, 2024 that the video evidence [he] requested does not support the charge, and does not say [he] committed any action of Trafficking." [Filing No. 15 at 2.] Officer Solomon then allegedly replied, "I personally do not care what policy says, or what the evidence does or does not show, as I have already told you, you're guilty. I believe that because you were there, in front of the range, and who wrote the conduct report, you are guilty." [Filing No. 15 at 2.] Officer Solomon states in his Declaration that he "did not tell [Mr.] Williams that [he] was going to find [Mr. Williams] guilty no matter what," but "based [his] guilty finding on the evidence." [Filing No. 11-12 at 2.] In contrast, Mr. Williams states in his Declaration that he said, "Please look at the evidence[.] [I]t literally contradicts what the conduct report says," to which Officer Solomon replied, "I do not care[.] [Y]ou're guilty[.] [A]ppeal it[.] [T]hat's what the appeal process is for." [Filing No. 15 at 2.]

Mr. Williams filed appealed to both the Facility Head and the Final Reviewing Authority, and both were denied. [Filing No. 11-8; Filing No. 11-9.] He has now filed a Petition for a Writ of Habeas Corpus before the Court, arguing that he was denied the right to present evidence, the right to a lay advocate, and the right to a fair hearing before an impartial decisionmaker, as well as

5

that there was insufficient evidence to convict him and that the prison violated internal policy during his disciplinary proceedings. [Filing No. 2.]

### III.
### DISCUSSION

As a preliminary matter, the Respondent argues that Mr. Williams has procedurally defaulted some of his arguments because he did not raise them at the administrative level, including that he was unlawfully prevented from presenting witnesses and was denied a lay advocate. [Filing No. 11 at 6.] Because exhaustion potentially narrows the number of claims in the case, the Court turns first to that issue before considering the merits.

A.   **Exhaustion**

The Respondent argues that Mr. Williams has failed to exhaust his remedies regarding his arguments that he was unlawfully prohibited from presenting witnesses and was denied a lay advocate. [Filing No. 11 at 6.] The Respondent states that Mr. Williams raised neither of these arguments in his administrative appeal, so he has procedurally defaulted these arguments. [Filing No. 11 at 6.] The Respondent argues further that Mr. Williams has not demonstrated cause or prejudice to excuse his procedural default because nothing prevented him from presenting his arguments at the administrative level. [Filing No. 11 at 8.]

Mr. Williams acknowledges that the Respondent argues that he "failed to exhaust remedies," but offers no argument to contradict the Respondent. [Filing No. 14 at 1-4.]

In Indiana, only the issues raised in a timely appeal to the Facility Head and then to the Final Reviewing Authority may be raised in a subsequent petition for a writ of habeas corpus unless a showing of cause and prejudice or a miscarriage of justice has been made. *See* 28 U.S.C. § 2254(b)(1)(A); *Washington v. Boughton*, 884 F.3d 692, 698 (7th Cir. 2018). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some

6

objective factor external to the defense impeded compliance with the procedural rule. . . . This normally means [the] petitioner must show[ ] that the factual or legal basis for a claim was not reasonably available, or that some interference by officials[ ] . . . made compliance impracticable." *Love v. Vanihel*, 73 F.4th 439, 446-47 (7th Cir. 2023) (citations and internal quotation marks omitted).  "[T]o establish prejudice, the prisoner must show not merely a substantial federal claim, such that the errors at trial created a possibility of prejudice, but rather that the constitutional violation worked to his actual and substantial disadvantage." *Id.* at 448 (citation and emphasis omitted).

Among the two administrative appeals, only Mr. Williams's arguments from the first-level appeal are in the record.  [Filing No. 11-8.]  The second-level appeal documents in the record show only the denial by the Facility Head.  [Filing No. 11-9.]  On review of the available record, the Court agrees that Mr. Williams did not argue during his first-level appeal that he was unlawfully prohibited from presenting evidence and having a lay advocate.  [Filing No. 11-8 at 2-4.]  He argued that there was insufficient evidence and that Officer Solomon predetermined his guilt before hearing the evidence.  [Filing No. 11-8 at 2-4.]  Mr. Williams has thus procedurally defaulted his arguments regarding an inability to present evidence or have a lay advocate.  Mr. Williams does not address cause or prejudice in his reply, so he has not met his burden to justify excusing the procedural default.  *Love*, 73 F.4th at 446-48.

Mr. Williams has procedurally defaulted his arguments regarding an inability to present evidence or have a lay advocate and therefore is not entitled to habeas relief on those grounds.  The Court does not consider Mr. Williams's arguments on those issues.  The Court goes on to consider the remaining arguments in the case regarding sufficiency of the evidence and the right to an impartial decisionmaker.

### B. Sufficiency of the Evidence

Mr. Williams argues that there was not "'some evidence' to support the thread bare" allegations against him. [Filing No. 2 at 3.] But he does not elaborate further on this point. [*See* Filing No. 2 at 3-8.]

The Respondent argues that "[t]here is 'some evidence' that [Mr.] Williams was guilty of trafficking." [Filing No. 11 at 15.] The Respondent states that "[t]he video shows [Mr.] Williams was walking up the stairs with a broom toward the hallway with the cells," then "a small piece of paper slides across the floor in front of the cells and the offender in cell 2 then retrieves it with a white stick," followed by the offender in cell 2 "pass[ing] it to cell 3." [Filing No. 11 at 15.] The Respondent notes that "[n]o one else [was] in the area" outside of a cell besides Mr. Williams. [Filing No. 11 at 15.] The Respondent states that the video footage alone provides "some evidence" for his conviction. [Filing No. 11 at 16.]

Mr. Williams's reply does not address the Respondent's argument.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56 (emphasis added).

The Respondent has filed the video footage *ex parte,* and the Court has reviewed it and finds that the footage could align with the Respondent's description. [Filing No. 13 (video footage filed ex parte).] The footage is consistent with Mr. Williams being the only individual outside of a cell on the range and sweeping while a piece of paper whisked across the ground to an inmate's cell and was passed around. [*See* Filing No. 13.] While no angle of the video footage clearly

8

shows Mr. Williams himself sweeping the piece of paper to the cells, his proximity to the trafficked contraband provides some evidence to support Mr. Williams's conviction, all that is necessary under the standard of review. See *Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992) (affirming denial of habeas relief and reasoning that there exists "some evidence" of guilt when only a few prisoners have access to contraband).

Mr. Williams is not entitled to habeas relief on the grounds of insufficiency of the evidence.

C. **Impartial Decisionmaker**

Mr. Williams argues that he was denied an impartial decisionmaker. [Filing No. 2 at 4.] He states that "prior to the hearing," Officer Solomon stated that Mr. Williams was "guilty no matter what. [Officer] Solomon was reaching the conclusion of [Mr. Williams's] being guilty prior to a hearing ever taking place, therefore, depriving [him] of an impartial decisionmaker and violating [his] due-process rights." [Filing No. 2 at 4.]

The Respondent argues that "there is no evidence that [Officer] Solomon was involved in the conduct leading to the charge or that some other circumstance outside the disciplinary proceeding questioned the integrity of the hearing." [Filing No. 11 at 13.] The Respondent states that Officer Solomon "did not tell [Mr.] Williams that he was going to find [Mr.] Williams guilty no matter what, and instead he found [Mr.] Williams guilty based off of the evidence in the case." [Filing No. 11 at 13 (citing Filing No. 11-12 (Officer Solomon's declaration)).] Finally, the Respondent argues that even if Officer Solomon "reached the conclusion that [Mr. Williams] was guilty prior to the hearing," that "alone does not show that [Officer] Solomon was biased" because it is not "clear evidence" to overcome Officer Solomon's legally entitled presumption of honesty and integrity. [Filing No. 11 at 13.]

9

Mr. Williams replies that Officer Solomon informed him that "he was finding petitioner guilty no matter what" "prior to a hearing ever taking place," "therefore, depriving petitioner of an impartial decisionmaker." [Filing No. 14 at 2.]

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decisionmaker is necessary in order to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity." *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). "To overcome that presumption, [a prisoner] need[s] to present clear evidence of bias." *Nelson v. Stevens*, 861 F. App'x 667, 670 (7th Cir. 2021). This presumption can be rebutted when a petitioner provides "specific allegations" and other evidence of a decisionmaker's bias in his particular case. *Bracy v. Gramley*, 520 U.S. 889, 909 (1997) (cited by *Higgason v. Lemmon*, 6 Fed. App'x 433, 435 (7th Cir. 2001) (applying *Bracy* to deny habeas relief regarding impartial decisionmaker)). Hence while a disciplinary hearing officer can make statements indicating "he [is] confident in the charges . . . lodged against" the prisoner, it is unconstitutional for a disciplinary hearing officer "to predetermine the hearing outcome" notwithstanding the evidence. *Prude v. Meli*, 76 F.4th 648, 660 (7th Cir. 2023). "No reasonable official could believe that predetermining the outcome of a disciplinary hearing—no matter how that is accomplished—is consistent with due process." *Id.* "[A]llegations of bias" are a question of fact for the Court. *See id.* at 658.

In this case, it is one matter for Officer Solomon to have been "confident in the charge[] . . . lodged against" Mr. Williams. *Id.* It is another matter entirely if Officer Solomon actually said, "I do not give a f*** what policy says," "I personally do not care . . . what the evidence does or does not show," "[m]y mind is already made up," and "I have already found you guilty." [Filing

10

No. 15 at 2.] The Court has observed in the past that "[t]here is admittedly little appellate authority on . . . potential instances of bias in disciplinary cases," but it takes little stretch of the caselaw to rule that a decisionmaker dead-set on conviction notwithstanding the evidence is sufficiently biased to raise constitutional concerns. *Boyd v. Brown*, No. 2-15:cv-00006-JMS-MJD, 2016 WL 4440399 (S.D. Ind. Aug. 23, 2016) (granting habeas petition and vacating disciplinary sanctions due to lack of impartial decisionmaker).

While there is still some evidence to support Mr. Williams's conviction, it is not unequivocal, and the Court is skeptical that harmless error applies in cases adequately alleging a biased decisionmaker. "[T]he state offers no authority . . . that allowing a biased tribunal to preside over a prison discipline hearing can be harmless error, and [the Court has] found none." *Daher v. Vannatta*, 118 F. App'x 981, 984 (7th Cir. 2004) (considering the possibility that an impartial decisionmaker cannot be subject to harmless error). A biased decisionmaker is likely a "structural error" not susceptible to harmless-error analysis. *See Franklin v. McCaughtry*, 398 F.3d 955, 961 (7th Cir. 2005) (vacating district judge's habeas decision where presiding judge appeared to conclude that petitioner was guilty before presiding over the case because "where there is a structural error, such as judicial bias, harmless error analysis is irrelevant"). If Mr. Williams's allegations are true, he would be entitled to relief. *See, e.g.*, *Kirby v. Superintendent*, 2019 WL 251245, at *1 (S.D. Ind. Jan. 16, 2019) (granting habeas relief where before the disciplinary hearing the petitioner "received orders to move to disciplinary segregation," and the result of the hearing was indeed "confinement in disciplinary segregation").

The question remains, though, whether Mr. Williams or Officer Solomon is telling the truth. Both have submitted Declarations, each of which transformed "into an affidavit" because each declares "under penalty of perjury that [it is] true." *Dale v. Lappin*, 376 F.3d 652, 655 (7th

11

Cir. 2004). Mr. Williams has sworn under oath that Officer Solomon predetermined his guilt. Officer Solomon has sworn under oath that he did not predetermine Mr. Williams's guilt. This is a material factual dispute.

In such circumstances the Seventh Circuit has made clear the need for a court to gather additional evidence:

> [A] prison disciplinary board [is] not entitled to the presumption of correctness that 28 U.S.C. § 2254(e) affords to judicial findings. . . . [W]hen a prisoner who seeks a writ of habeas corpus provides competent evidence (such as an affidavit by someone with personal knowledge of the events) contradicting an assertion by the prison disciplinary board on a material question of fact pertinent to an issue of constitutional law, the district court must hold an evidentiary hearing to determine where the truth lies.

*Johnson v. Finnan*, 467 F.3d 693, 694 (7th Cir. 2006).

Mr. Williams has submitted an affidavit alleging a conversation with Officer Solomon before the disciplinary hearing, which is within Mr. Williams's "personal knowledge of the events" and "contradict[s] [Officer Solomon's] assertion" that Officer Solomon based the conviction solely on the evidence. *Id.* In light of this precedent, the Court cannot rule on the merits of Mr. Williams's Petition based solely on the record because of the parties' factual dispute. *See, e.g.*, *Crockett v. Warden*, 2024 WL 837230, at *3 (S.D. Ind. Feb. 28, 2024) (ordering respondent to state "whether they wish to request an evidentiary hearing" where there was a "factual dispute" over "whether [the petitioner] refused to attend his disciplinary hearing" or "whether prison officials conspired to convict [the petitioner] . . . without informing him of the charge, inviting him to attend the disciplinary hearing, or notifying him in writing of the decision as he claims in his petition"); *Peacher v. Reagle*, 2023 WL 2973783, at *4 (S.D. Ind. Apr. 17, 2023) (ordering respondent to state whether they intended to have an evidentiary hearing amid factual dispute regarding whether the petitioner "was convicted without a disciplinary hearing"); *Pannell v. Warden*, 2020 WL 416266, at *5 (N.D. Ind. Jan. 27, 2020) (ordering an evidentiary hearing where there was a "factual

dispute about whether [the petitioner's] due process rights were violated by denying him the ability to be present during . . . live testimony").

## IV.
### CONCLUSION

Among a prisoner's "privileges and rewards which can be taken away when [he] misbehave[s]," "[f]orfeiting good conduct time credit is perhaps the most serious loss." *Redding v. Fairman*, 717 F.2d 1105, 1116 (7th Cir. 1983). "The surest protection" against unconstitutional loss "is an impartial decisionmaker." *Id.* From the current record, it is not clear that this constitutional protection was upheld. Accordingly, the Court **ORDERS** the Respondent **to file a notice within 21 days of the issuance of this Order** stating whether they wish to request an evidentiary hearing, or instead vacate the sanctions against Mr. Williams and accordingly recalculate his good-time credit and prison-release date. If the Respondent requests an evidentiary hearing, the Court will set a hearing date and determine whether to appoint counsel for Mr. Williams. *See* Rule 8 of the *Rules Governing Section 2254 Cases* (stating that "[i]f an evidentiary hearing is warranted, the judge must appoint an attorney to represent a petitioner who qualifies to have counsel appointed under 18 U.S.C. § 3006A").

Date: 5/1/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

GEORGE WILLIAMS
200566
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Abigail Recker
INDIANA ATTORNEY GENERAL
abigail.recker@atg.in.gov